IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARRYL CRAYTON, | ) | CASE NO. 1:05 CV 729 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BRADSHAW, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## I.  Introduction

Before the Magistrate Judge by referral[1] is the pro se petition for a writ of habeas corpus filed by Darryl Crayton.[2]  Crayton is serving a 43-year sentence in the Mansfield Correctional Institution after pleading guilty to three counts of aggravated robbery with gun specifications and one count of aggravated robbery without specifications.[3]

Crayton in his petition asserts:  (1) that the state violated Ohio's speedy trial provisions in prosecuting his case; (2) that his guilty plea was not knowing and voluntary; (3) that he was denied due process when he was given a maximum, consecutive sentence without any factual basis for such a sentence; and (4) that he received ineffective assistance from both his trial and appellate counsels.[4]

---

[1] ECF # 6.

[2] ECF # 1.

[3] *Id.* at 1.

[4] *Id.* at 5-6.

The state responds:  (1) that no violation of the speedy trial rules exists and, even if one did, any basis for raising such a claim was waived by the guilty plea;[5] (2) that Crayton's plea was correctly found to be knowing and voluntary by the reviewing appeals court;[6] (3) that Crayton's federal due process claim concerning his sentence was never fairly presented to the Ohio courts;[7] and (4) that the ineffective assistance of counsel claim is procedurally defaulted because it was first advanced in an application to re-open that the Ohio court denied as untimely.[8]

For the reasons that follow, the Magistrate Judge recommends that Crayton's petition be dismissed in part and denied in part as is more fully set forth below.

## II.   Facts

### A.      Trial court

Because Crayton was sentenced after pleading guilty, there is no trial record of the underlying facts concerning the four offenses for which Crayton entered his plea.  However, the record does show that had the matter proceeded to trial, the state had evidence that Crayton and an accomplice engaged in robberies at two gas station convenience stores,[9]

---

[5] ECF # 8, Attachment 1 (return) at 18, 25-27.

[6] *Id.* at 21-24.

[7] *Id.* at 15-17.

[8] *Id*. at 14.

[9] ECF # 8, Attachment 9, Ex. 28 (transcript) at 6-7.

where Crayton entered the businesses displaying a gun to the clerks,[10] took cash from the business cash drawer and from individuals,[11] and then, in the final robbery, escaped in a car driven by the accomplice.[12]

The state asserted that it could prove that Crayton and his accomplice[13] fled from the last robbery in a high-speed police chase that ended in a crash.[14] The state told the trial judge that it could establish that Crayton, upon being detained at the crash scene in possession of money, a stolen pack of Newports,[15] and purses from the robbery,[16] explained these facts by telling police that while he was asleep in the car someone leaned through the car window, tossed three purses into the back seat and "stuffed the cash, money, currency down his pants."[17]

---

[10] *Id*. at 7.

[11] *Id.* at 7-8.

[12] *Id*. at 15-16.

[13] ECF # 8, Attachment 11, Ex. 28 (transcript) at 99.

[14] ECF # 8, Attachment 9, Ex. 28 (transcript*)* at 28-29.

[15] *Id.* at 7.  The state asserted that during each of the robberies Crayton took a pack of Newport King cigarettes from the convenience store.

[16] *Id.* at 29-30.

[17] *Id*. at 31.

In addition, the state was ready to show that Crayton was visible on a surveillance tape committing one of the offenses[18] and was identified by several victims of the various crimes in a photo lineup.[19]

Given this evidence, Crayton was offered the opportunity by the state to plead guilty to the four robbery offenses and have the multiple mandatory three-year gun specifications on three of the robbery counts merged into a single specification.[20]

However, when Crayton was informed by the trial judge that entering a guilty plea under this arrangement would expose him to a maximum sentence of 43 years – four individual 10-year terms for each robbery plus the remaining mandatory 3-year term for the single gun specification – he hesitated.[21]  The record reflects that he was concerned that he would receive a significantly greater penalty than his accomplice.[22]

Nevertheless, after consulting with counsel, Crayton, in an on-the-record colloquy with the trial judge, affirmed:  (1) that he understood the charges against him; (2) that no promises concerning the length of any sentence were part of his plea agreement; (3) that in pleading guilty he was potentially liable to receive the maximum sentence, subject to the

---

[18] *Id.* at 34. The state had the store's surveillance tape enhanced at Cleveland's NASA Glenn Lewis Research Center to more clearly identify the individual shown committing the robbery. *See, id.* at 19.

[19] *Id*. at 8-9.

[20] *Id.* at 36-37.

[21] ECF # 8, Attachment 10, Ex. 28 (transcript) at 73-74.

[22] ECF # 8, Attachment 11, Ex. 28 (transcript) at 109.  Crayton's accomplice who drove the getaway car received an 18-month sentence.

judge's review of a pre-sentence report; and (4) that he received satisfactory representation from his attorney in preparing for the plea.[23]  Crayton then entered a plea of guilty.  The trial judge accepted the plea and deferred sentencing for one month so as to review a pre-sentence report.[24]

Immediately prior to sentencing, Crayton made an oral motion to withdraw his plea, citing allegedly incomplete discovery at the time he originally agreed to plead guilty and the lack of a ruling on a motion to suppress.[25]  Upon this, the court continued the case.[26]  Following the continuance, the court resumed the hearing on the motion to withdraw the plea, denied the motion,[27] and then, noting that Crayton had committed prior violent crimes and that these offenses involved a firearm, sentenced Crayton to the maximum penalty here, an aggregate term of 43 years.[28]

## B.    Direct appeal

Crayton, now represented by new counsel, filed a timely direct appeal, raising the following three assignments of error:

---

[23] *See*, ECF # 8, Attachment 10, Ex. 28 (transcript) at 59-78. The specific elements of the plea colloquy will be individually analyzed later.

[24] *Id.*

[25] *Id*. at 79.

[26] *Id*.

[27] ECF # 8, Attachment 11, Ex. 28 (transcript) at 93.

[28] *Id.* at 108-109.

1.     The court erred in denying appellant's motion to dismiss based upon lack of a speedy trial, thereby violating appellant's right to a speedy trial as guaranteed him by the Sixth Amendment to the United States Constitution, the Ohio Constitution and the Ohio Revised Code Section 2945.71.

2.     The court erred by denying appellant's motion to withdraw his guilty pleas prior to sentencing.

3.     The trial court erred in imposing maximum consecutive sentences in violation of R.C. 2929.19 and R.C. 2929.11(B).[29]

After the state filed a brief in opposition,[30] the state appeals court rejected all three assignments of error and affirmed the decisions of the trial court.[31]

The appellate panel noted with respect to the speedy trial allegation that the gross number of days between Crayton's arrest and the date his plea was accepted totaled 391 days. However, the appeals court observed that Crayton asked for four continuances during that time that consumed 116 days and which, by Ohio law, must be deducted from the time used to calculate a speedy trial.  Further, Crayton filed two motions to suppress, a motion to change counsel, several discovery motions and a motion to receive a transcript, all of which tolled the speedy trial clock and, taken together with the four continuances, placed Crayton well within the limits imposed by the speedy trial statute.[32]

---

[29] ECF # 8, Attachment 2, Ex. 15 (appellant's brief) at ii.

[30] ECF # 8, Attachment 3, Ex. 16 (appellee's brief).

[31] *State v. Crayton*, No. 81257, 2003 WL 21027500 (Ohio App. 8 Dist. May 8, 2003).

[32] *Id*. at **1-2.

The appeals court then considered Crayton's assertion that error was committed in denying his motion to withdraw his guilty plea.  The court found that Crayton was represented by competent counsel, had a full hearing on his motion to withdraw the plea, and offered no basis to the trial court to withdraw a plea he had entered into after a full colloquy in open court.[33]

Finally, in regards to the sentence, the appeals court found that the trial judge had made findings on the record that Crayton used a firearm to terrify the store clerks, engaged in an escape that posed great danger to the public, and had a prior record involving multiple aggravated robberies and felonious assaults with a firearm, therefore, posing a great risk of recidivism.  Although the trial judge did not employ the precise language of the Ohio statute concerning the imposition of maximum sentences – the "magic words" – the appellate panel concluded that the statutory language was a guideline not a requirement and that the trial judge had followed the principles of the law in correctly imposing a maximum sentence.[34]

Crayton immediately sought reconsideration of this decision, focusing exclusively on the maximum sentence and arguing that Crayton's sentence was clearly excessive when compared with the 18-month sentence imposed on his accomplice in several of the robberies

---

[33] *Id.* at **2-3.

[34] *Id.* at **3-4.

who drove the getaway car.[35]  The state did not reply, and the appeals court denied Crayton's

application for reconsideration without comment.[36]

Crayton, now proceeding pro se, then timely appealed to the Ohio Supreme Court,

asserting three propositions of law:

1.      The trial court erred in denying appellant's motion to dismiss based
        upon lack of [a] speedy trial, thereby violating appellant's right to a
        speedy trial as guaranteed him by the Sixth Amendment to the United
        States Constitution, the Ohio Constitution and O.R.C. Section 2945.71.

2.      The court erred in denying appellant's request to vacate his guilty plea
        prior to sentencing in violation of the Fourteenth Amendment under the
        United States Constitution.

3.      The trial court erred by imposing maximum sentences in violation of
        O.R.C. Section[s] 2929.11, 2929.14, 2929.19 and the Eighth and
        Fourteenth Amendment[s] under the United States Constitution.[37]

The state filed a memorandum in response[38] and, without comment, the Supreme

Court denied leave to appeal, dismissing the appeal as not involving any substantial

constitutional question.[39]  No petition for a writ of certiorari was filed with the United States

Supreme Court.

---

[35] ECF # 8, Attachment 5, Ex. 18 (appellant's motion for reconsideration).

[36] *Id*. at Ex. 19 (appellate court journal entry).

[37] ECF # 8, Attachment 6, Ex. 22 (Crayton's memorandum) at i.

[38] ECF # 8, Attachment 7, Ex. 23 (memorandum in response).

[39] *Id*. at Ex. 24.

C.     **Delayed application for reopening**

Almost nine months after being denied appeal in the Ohio Supreme Court, Crayton

filed an untimely pro se application for delayed reopening of his appeal pursuant to Ohio

Appellate Rule 26 (B).[40]

In his motion, Crayton asserted that he was untimely with his Rule 26(B) application

because the state had not provided him with an attorney to pursue it.[41]  This, he contended,

is contrary to the Sixth Circuit's holding in *White v. Schotten*[42] which held that Ohio

Rule 26(B) applications are part of the direct appeal process for which he is entitled to

counsel. His argument on a reopened appeal – should he successfully excuse the untimeliness

– was that his appellate attorney was ineffective in not raising a claim that the trial judge

impermissibly influenced the plea negotiations by stating an opinion as to likely guilt.[43]

The state responded in opposition, stressing that Rule 26(B) applications had been

uniformly held by Ohio courts to be a post-conviction proceeding that did not entail a right

to counsel and, thus, Crayton had not excused his untimeliness.[44] The state appeals court

---

[40] *Id.* at Ex. 25.

[41] *Id.*, Ex. 25 at 1.

[42] *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), *overruled by Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005) (en banc).

[43] ECF # 8, Attachment 7, Ex. 25 at 3-4.

[44] ECF # 8, Attachment 8, Ex. 26 (memorandum in opposition) at 3-5.

agreed, concluding that Crayton's Rule 26(B) application was untimely and not excused by the lack of counsel. Crayton's application was denied on that basis.[45]

The Ohio court also held, however, that Crayton's proposed basis for a reopened appeal – the ineffectiveness of his appellate counsel – was barred by res judicata in that he could have, but failed, to raise it in his pro se appeal to the Ohio Supreme Court. Crayton did not appeal this decision.[46]

## D.    Federal habeas petition

Crayton thereupon timely filed the present petition for federal habeas relief, asserting the following four grounds for relief:

1.    Petitioner's right to a speedy trial was violated. Petitioner was held for 391 days pending trial, well in excess of any statutory limitations period. The "deductions" taken by the state court of appeals were pretextual in nature and not fairly supported by the record.

2.    Petitioner was deprived of due process of law by being illegally induced to enter a plea of guilty, and then being improperly refused his timely request to withdraw the plea. The trial court illegally induced a plea of guilty based on false promises of leniency and despite petitioner's continuing protestations of innocence. The trial court further refused to permit the withdrawal of the plea after the petitioner demonstrated that it [sic] was not fully counseled, knowingly or voluntarily or intelligently made.

3.    Petitioner's right to a trial by jury was violated by the imposition of multiple maximum and consecutive terms of incarceration totalling [sic] four time[s] the lawful maximum in the absence of jury fact-finding or a valid waiver. Petitioner's maximum sentence under Ohio law was a term of thirteen years. Petitioner was sentenced to

---

[45] *Id.* at Ex. 27 (journal entry and opinion).

[46] *Id.* at 3-4.

serve 43 years in the absence of any findings made by a jury as to sentence-enhancing elemental fact-finding, and in the absence of any waiver thereof.

4.     Petitioner was deprived of the effective assistance of counsel at trial and on appeal. Trial counsel failed to advise petitioner properly on a clear point of law or to adequately research, prepare and investigate, resulting in the entry of the plea. Appellant[ 's] [sic] counsel failed to present the substantial, significant and obvious constitutional issues regarding the trial court taking over the plea negotiation process and forcing a plea from the petitioner, resulting in prejudice to the appellant [sic].[47]

### III.   Analysis

## A.     Overview

The state maintains that two of Crayton's four asserted grounds for habeas relief should be dismissed as procedurally defaulted and the remaining two denied since the state appeals court decision that rejected them was not an unreasonable application of clearly established federal law. The Magistrate Judge will address the grounds individually after setting out the appropriate standard of review for each category.

## B.     Procedural default

### 1.     *The applicable law*

The Sixth Circuit has recently explained the analytical framework for establishing procedural default as follows:

A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court. The petitioner must first exhaust the remedies available in state courts by fairly

_____

[47] ECF # 1 at 5-6.

presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court. The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to Rule on the petitioner's claims." The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state court while state remedies were available *or* when the petitioner's failure to comply with a state procedural Rule prevented the state court from reaching the merits of the claims.

For noncompliance with a state procedure to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith*. First, there must be a state procedure in place that the petitioner failed to follow. Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default. Third, the state procedural Rule must be an "adequate and independent" state ground to preclude habeas review. This inquiry "generally will involve an examination of the legitimate state interests behind the procedural Rule in light of the federal interest in considering federal claims." A state procedural Rule must be "firmly established and regularly followed" to constitute an adequate basis for foreclosing habeas review. A state procedural Rule is an independent ground when it does not rely on federal law. If these three factors are satisfied, the petitioner can overcome the procedural default by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[48]

To establish "cause" for a procedural default, a habeas petitioner must show that "something *external* to the petitioner, something that cannot be fairly attributable to him[,] ..." precluded him from complying with the state procedural rule.[49] Establishing "prejudice" requires that any alleged constitutional error be shown to have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional

---

[48] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 423 (6th Cir. 2006) (internal citations omitted, emphasis in original).

[49] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

-12-

dimensions."[50]  A "fundamental miscarriage of justice" is understood to mean "actual innocence."[51]

Ineffective assistance of counsel may provide a cause to excuse procedural default, but only if that claim is itself first fairly presented to and exhausted in the state courts.[52] However, a failure to exhaust state remedies on an ineffective assistance of counsel excuse for a procedural default may itself also be excused from procedural default if a federal habeas petitioner can establish cause and prejudice concerning that claim.[53]  But a claim of ineffective assistance of counsel may not excuse a procedural default occurring during state post-conviction proceedings because there is no right to counsel in such proceedings.[54]

**2.**    ***Crayton procedurally defaulted on his third ground for relief – that he was denied his right to a trial by jury by the imposition of a maximum sentence without requisite findings of fact by a jury – and on the fourth asserted ground for relief – that he was deprived of the effective assistance of counsel at trial and on appeal.***

*a.*    *Third ground for relief – allegedly improper sentence*

As noted by the state, Crayton argued in the state courts that the maximum and consecutive sentences he received "were in violation of certain Ohio statutes, but he did not argue even then that these [purported] violations [in his sentences] resulted in a violation of

---

[50] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[51] *Lancaster v. Adams,* 324 F.3d 423, 436 (6th Cir. 2003).

[52] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[53] *Id.*

[54] *Coleman*, 501 U.S. at 752.

any federal rights...."[55]  Consequently, the state maintains, Crayton procedurally defaulted on the present federal habeas claim by failing to fairly present it to any state court.

In his traverse, Crayton concedes that "this claim is phrased differently from the way it was presented to the [state] court of appeals," but argues that the change in phrasing – from basing the claim on a violation of Ohio statute in the state courts to grounding it on a violation of the federal constitutionally-established right to a jury trial in the federal habeas petition – was done with "the assistance of a jailhouse lawyer" Crayton used to complete his present petition for habeas corpus.[56]

"That person" – the jailhouse lawyer – is, according to Crayton, the person who "rephrased the argument" concerning sentences and presumably should be held responsible if a mistake was made.[57]

Crayton essentially claims that since he "lacks skill or knowledge in the science of law" and here relied on a fellow inmate to change the words of Crayton's state claims for purposes of this petition, this Court should overlook any problem with the current phrasing of this claim because doing so won't prejudice the state, which responded to the previously-worded claim throughout the state proceedings.[58]

---

[55] ECF # 8, Attachment 1 at 16.

[56] ECF # 10 at 12.

[57] *Id.*

[58] *Id.*

While the Magistrate Judge is persuaded that Crayton probably did permit another inmate to alter his previously-asserted claim concerning the terms of his sentence, there is no basis for recommending that this present, re-worded claim be heard by a federal habeas court.  Plainly, Crayton's sentencing claims before Ohio courts were exclusively based on purported violations of Ohio law.  Equally plain is that an asserted violation of a cited Ohio statute does not fairly inform an Ohio court of a federal constitutional claim rooted in a purported violation of the federally-secured right to trial by jury.[59]  Finally, it is well-settled that claims not fairly presented to state courts are not considered by federal habeas courts.[60]

It is Crayton who, by his own admission, chose to hand over the drafting of his federal habeas claim to a fellow inmate, Crayton who chose to submit the altered claim to this Court and Crayton who must now bear responsibility for the fact that the resulting claim, as re-written, was never fairly presented to an Ohio court and, so, is beyond review by this Court.  The Magistrate Judge, therefore, recommends that ground three of the present petition be dismissed as procedurally defaulted

b.      *Fourth ground for relief – ineffective assistance of trial and appellate counsel*

Crayton here attempts to present to a federal habeas court the ineffective assistance of counsel claims he first raised in his Rule 26 (B) application that was denied as untimely by an Ohio appeals court.

---

[59] *See, Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

[60] *Smith*, 463 F.3d at 431.

The state contends that Crayton's application was rejected in compliance with an established and regularly followed Ohio Rule regarding timeliness for Rule 26(B) applications, and the untimeliness was not excused by Crayton's lack of counsel; counsel is not required in post-conviction Rule 26(B) proceedings.  This claim is, therefore, procedurally defaulted.[61]

Crayton makes no response in his traverse to the procedural default argument advanced by the state concerning this claim.

The Magistrate Judge initially observes that the foundation for Crayton's original assertion that his admittedly untimely petition should have been heard was his belief that he was constitutionally entitled to counsel on his Rule 26(B) application, citing *White v. Schotten* in support.

The Ohio appeals court, in denying Crayton's untimely petition, found that Crayton's argument about a lack of counsel did not constitute good cause.[62]  Moreover, the Sixth Circuit in an en banc decision in *Lopez v. Wilson*[63] has brought Sixth Circuit law into conformity with Ohio jurisprudence that an Ohio Rule 26(B) application to reopen an appeal is part of post-conviction review and, thus, carries with it no federal constitutional right to counsel.[64]

---

[61] ECF # 8, Attachment 1 at 15.

[62] ECF # 8, Attachment 8, Ex. 27 at 2.

[63] *Lopez*, 426 F.3d 339.

[64] *Id.* at 352.

-16-

Since Crayton's sole stated reason for untimeliness – the lack of an attorney to prepare his Rule 26(B) application – is insupportable in terms of federal law, the decision of the state court to deny the application as untimely constitutes a proper application of the state procedural rule. This state rule provides an adequate and independent ground for precluding federal habeas review.[65] Therefore, the Magistrate Judge recommends the dismissal of the ineffective assistance of appeal counsel ground for relief as procedurally defaulted.

## C. Reasonable application of /acting contrary to clearly established federal law

### 1. Applicable law

Pursuant to 28 U.S.C. § 2254(d)(1), a federal habeas court may grant the writ following a rejection of the asserted claim on the merits by a state court only if that state decision was either "contrary to," or involved an "unreasonable application of," "clearly established federal law."

Under the "contrary to" clause, the federal court may grant the writ only when it determines that the state court arrived at a conclusion that is opposite to that reached by the United States Supreme Court on a question of law or decides the matter differently than the United States Supreme Court has decided on a set of materially indistinguishable facts.[66]

---

[65] *Monzo v. Edwards*, 281 F.3d 568, 578 (6th Cir. 2002).

[66] *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000); *Jones v. Jamrog*, 414 F.3d 585, 591 (6th Cir. 2005).

-17-

The words "contrary to" should be understood to mean "diametrically different, opposite in character or nature, or mutually opposed."[67]

"Unreasonable application" requires that the federal court determine if the state tribunal correctly identified the governing legal principle from the holdings of the United States Supreme Court but then unreasonably applied that Rule to the facts.[68]  The test here is whether the state court's conclusion was "objectively unreasonable" and not merely erroneous or incorrect.[69]

In conducting its analysis under either standard, the federal habeas court may only look to the holdings, not dicta, of the United States Supreme Court.[70]  However, the court is also bound by Sixth Circuit decisions when they conclude that federal law has been clearly established as to a particular matter.[71]  Where "there is *no* 'clearly established federal law as determined by the Supreme Court' to support the petitioner's argument, that argument must fail."[72]

---

[67] *Williams*, 529 U.S. at 405.

[68] *Id*. at 407-08; *Harris v. Carter*, 337 F.3d 758, 761 (6th Cir. 2003).

[69] *Williams*, 529 U.S. at 409-11.

[70] *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

[71] *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004).

[72] *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)) (emphasis in original).

**2.    *The state court did not act contrary to clearly established federal law in determining that the trial court properly declined to permit the withdrawal of Crayton's guilty pleas.***

*a.    Crayton's claims and the state court decision*

In his brief on appeal to the Ohio court, Crayton rests his argument concerning the attempt to withdraw his guilty pleas on the assertion that he assented to the pleas only after being induced to do so, thus depriving the pleas of their voluntary nature,[73] citing to the United States Supreme Court decision of *Machibroda v. United States*.[74]  He maintains that his trial counsel failed to secure an actual audio tape of one of the robberies that Crayton claimed was exculpatory – although he concedes he did have a transcript of that tape – thereby rendering Crayton unprepared to make a knowing decision about the plea, and that his counsel failed to adequately advise him as to the elements of the plea.[75]  Moreover, he contended that the trial court wore down his "free will and voluntariness" on the day of the plea.[76]  Accordingly, Crayton asserted that his plea was not voluntary, and the trial court should have permitted him to withdraw it.[77]

Although the state appeals court did not cite any controlling authority, federal or otherwise, for its reasoning, it concluded that Crayton's counsel did make numerous

---

[73] ECF # 8, Attachment 2, Ex. 15 at 8.

[74] *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

[75] ECF # 8, Attachment 2, Ex. 15 at 9.

[76] *Id.*

[77] *Id.*

discovery motions for the actual audio tape – thus vitiating any claim to ineffectiveness – and that Crayton did possess the transcript.[78] In addition, it found that, while Crayton and his counsel may have had "differing opinions regarding the plea agreement, nothing in the record indicates that his counsel failed to explain the plea or its potential effects."[79] Finally, the appeals court found that the trial court did conduct a lengthy hearing on the request to withdraw the plea at which the trial judge "merely assured Crayton that he would receive fair and impartial treatment regardless of whether he proceeded to trial or entered a plea."[80]

b.    *Clearly established federal law – guilty pleas and withdrawal*

The Supreme Court has held that a plea of guilty is valid if it is entered into voluntarily and intelligently as determined under the totality of the circumstances.[81]  The Supreme Court has "never held that the [trial] judge must himself explain the elements of each charge to the defendant on the record.  Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."[82]

---

[78] *Crayton*, 2003 WL 21027500, at *2.

[79] *Id.*

[80] *Id*.

[81] *Brady v. United States*, 397 U.S. 742, 749 (1970).

[82] *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The Constitution requires that the defendant be informed of all direct consequences of his plea.[83]  Exposure to the maximum possible sentence is a direct consequence that must be communicated to the defendant.[84]  But subjective expectations by the defendant as to the possible length of sentence, if not realized, do not render involuntary an otherwise valid plea.[85]

A guilty plea must also be accompanied by "an affirmative showing that it was intelligent and voluntary."[86]  Generally, in a habeas context, that showing is made by the production of "a transcript of the state court proceedings to establish that the plea was made voluntarily."[87]

When evaluating the denial of a motion to withdraw a guilty plea, the federal habeas court must rely on the words used during the plea colloquy conducted in open court and not on any contrary beliefs or expectations about the plea or its consequences held by the defendant.  As stated by the Sixth Circuit in *Ramos v. Rogers*:[88]

> If we were to rely on [a defendant's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was

---

[83] *Brady*, 397 U.S. at 755.

[84] *Riggins v. McMackin*, 935 F.2d 790, 796 (6th Cir. 1991).

[85] *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975).

[86] *Boykin v. Alabama,* 395 U.S. 238, 242 (1969).

[87] *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

[88] *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999).

different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy ... indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent [habeas] petitioners such as [the present petitioner] from making the precise claim that is today before us. Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry.[89]

c.    *The state appeal court decision was not contrary to clearly established federal law.*

Here, the trial judge initially asked Crayton's defense counsel to respond after the prosecutor explained the plea agreement on the record. Tom Shaughnessy, Crayton's attorney, then told the court:

Mr. Crayton is aware of all of his Constitutional rights. He is aware of the possible penalties that this Court may impose upon him, and I believe he will enter these pleas here this afternoon knowingly, intelligently and voluntarily.[90]

Defense counsel then told the trial judge that he told Crayton that sentence would not be imposed on the same day that the plea was accepted but that the matter would be referred to the probation department for a pre-sentence investigation report so that, after that report was reviewed by the judge, sentencing could occur in thirty days.[91]

The judge thereupon began the colloquy with Crayton, asking if he understood that he had a right to a trial by jury or to one before the court;[92] that during such a trial he would

---

[89] *Id.* at 566 (internal citations and quotation marks omitted).

[90] ECF # 8, Attachment 10, Ex. 28 (Transcript) at 55.

[91] *Id.* at 56.

[92] *Id*. at 60.

be presumed innocent until guilt was proven beyond a reasonable doubt;[93] that during the trial he would have the right to testify if he chose, but could not be compelled to testify;[94] that his silence could not be spoken of in front of the jury;[95] that he would have a right to an attorney paid for by the state during the trial;[96] that he would have the right to compel the appearance of witnesses on his behalf;[97] that he would have the right to confront his accusers in open court, asking them questions through his attorney;[98] and that pleading guilty means that he would waive all the foregoing rights.[99]

Crayton answered in the affirmative to each element of this colloquy.  Then, the trial judge read each of the crimes Crayton was charged with, asking him if he understood the charges and the possible penalty for each charge.[100]  The trial judge specifically told Crayton on multiple occasions that the maximum penalties here were ten years for each aggravated robbery charge.[101]  Crayton first acknowledged on the record that he understood both the

---

[93] *Id.*

[94] *Id.* at 60-61.

[95] *Id*. at 61.

[96] *Id.*

[97] *Id.*

[98] *Id.*

[99] *Id.* at 62.

[100] *Id*. at 63-66.

[101] *Id.* at 64, 66, 67 (count one); 68 (count two); 70 (count three).

charge[102] and then that he understood the penalty to which he was exposed on each count before, in response to separate, specific inquiries, pleading guilty.[103]

After taking these pleas, which included an acknowledgment that, pursuant to the plea agreement, the three-year firearms specifications for each count had been merged into one three-year specification,[104] the trial judge directly asked Crayton:

> In making these pleas, do you understand that no promises can be made to you as to what penalty or sentence will be imposed?[105]

Crayton answered "yes,"[106] but then, when asked if any promises or threats had been made to induce his plea, further told the trial judge that he believed he was going to get a six-year sentence, to run concurrently with the three-year term mandated by the firearms specification.[107]

The trial judge immediately corrected Crayton, telling him that "I don't know how you have been left with that impression," instead telling him that the court would impose a sentence of between 3 and 45 years based on the pre-sentence report.[108]

---

[102] *Id.* at 66 (count one); 68 (count two); and 70 (count three).

[103] *Id.* at 66 (count one); 68 (count two); and 70 (count three).

[104] *Id.* at 71.

[105] *Id.*

[106] *Id.* at 72.

[107] *Id.*

[108] *Id.* at 72-73.

Significantly, the trial court permitted Crayton to then immediately conference with his attorney and, following that discussion, resumed the hearing by restating that the court "makes no promises on sentencing"[109] and was prepared to set the case for trial should Crayton not want to proceed with the pleas.

The defense counsel promptly told the court that Crayton "is indicating to me that he does not want to go to trial.  He wants to enter the pleas.  I think what he is nervous about is hearing the term '45 years.'"[110]

The court restated on the record that 45 years was the maximum, but that imposition of the maximum was subject to sentencing guidelines.  The trial judge told Crayton, "I want to be dead serious; do you understand what is going on here?"[111]  Crayton responded, "Yes," to which the trial judge immediately again asked, "Do you understand?"  Crayton once more said, "Yes."  To which the court, for a third time asked if Crayton wanted his pleas to "stick" or if wanted the case set for trial.  Crayton again said, "Go on with my pleas."[112]

---

[109] *Id.* at 73.

[110] *Id.* at 74.

[111] *Id.* at 76.

[112] *Id.* at 77.

-25-

The trial court yet again restated that the maximum penalty without the mandatory three-year term for the gun specification was 40 years[113] and that he would impose sentences after reviewing the pre-sentence report and following the guidelines.[114]

At this point the court again asked Crayton on the record if "anybody threatened or promised you anything, in any way, to cause you to plead guilty?"  Crayton responded, "No." The judge then inquired if these pleas were "completely free and voluntary and made of your own free will?"  Crayton again responded on the record, "Yes."[115]

Before finally formally accepting these pleas, the trial judge once more asked Crayton if he understood the possible penalties and was satisfied with the representation of his counsel.[116]  Crayton answered that he understood the penalties and was satisfied that his lawyer did a good job for him.[117]  With that, the court accepted the pleas and referred the case to the probation department for the pre-sentence investigation and report.[118]

Given this record, the Magistrate Judge recommends finding that the record supports the state court's decision that Crayton's pleas were validly given.  Each element of every charge was both explained in open court by the trial judge and Crayton's knowledge of these

---

[113] *Id.*

[114] *Id*.

[115] *Id.*

[116] *Id.* at 78.

[117] *Id.*

[118] *Id.*

elements was attested to by an affirmative representation by Crayton's defense counsel.[119] In addition, the direct consequences of a guilty plea – specifically, the exposure to the maximum sentence – was communicated to Crayton on the record numerous times.[120] Moreover, the pleas were accompanied by affirmative showings on the record that they were intelligently and voluntarily made.[121]

In such a context, the Magistrate Judge further recommends finding, pursuant to the rubric pronounced in *Ramos*, that there was no basis for withdrawing these pleas.  Crayton clearly had a subjective expectation of a different sentence, which was voiced on the record, but the trial judge explicitly told him that expectation could not be relied upon.  Knowing, and publicly acknowledging that he knew, that his subjective belief was not part of his plea arrangement, Crayton nonetheless pled guilty.  As the Sixth Circuit stated in *Ramos*, it would totally vitiate any plea if it could be withdrawn under such circumstances.

Accordingly, the Magistrate Judge recommends that the decision of the state court affirming the denial of Crayton's motion to withdraw his plea be found to be not contrary to clearly established federal law and further recommends that this ground for habeas relief, therefore, be denied.

---

[119] *See*, *Bradshaw*, 545 U.S. at 183.

[120] *Riggins*, 935 F.2d at 796.

[121] *Boykin,* 395 U.S. at 242.

**3.**     ***The state appeals court did not act contrary to clearly established federal law in determining that no violation of Crayton's speedy trial rights occurred.***[122]

*a.     Federal constitutional right to a speedy trial*

Besides the Speedy Trial Act,[123] which is applicable only to defendants in the federal criminal justice system, the Sixth Amendment guarantees a defendant the right to a speedy trial, the specific contours of which right is determined by assessing such factors as the length of time between arrest and trial, the reasons for any delay, the defendant's assertion of this right during the delay period, and any prejudice suffered by the defendant.[124]

Initially, unless "there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."[125] Indeed, the Sixth Circuit has held that the length of the delay is the "triggering" factor for further inquiry.[126]

Length of delay is measured from the date of earliest indictment or the date of arrest to the start of trial.[127] Generally, a one-year delay between arrest or indictment and trial is

---

[122] The state has claimed that this entire issue of speedy trial was waived by the entry of the guilty pleas.  *See*, ECF # 8, Attachment 1 at 18.  Here, the state asserts that the plea waives any claim that Sixth Amendment rights to a speedy trial were violated prior to the entry of the plea.  Because the state courts took no notice of a waiver in deciding this issue, the Magistrate Judge has proceeded to analyze the matter in light of the merits.

[123] 18 U.S.C. § 3161 *et seq*.

[124] *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Maples v. Stegall*, 427 F.3d 1020, 1025 (6th Cir. 2005).

[125] *Barker*, 407 U.S. at 530.

[126] *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001).

[127] *Maples,* 427 F.3d at 1026.

considered "presumptively prejudicial."[128]  However, any presumptive prejudice is not dispositive of a Sixth Amendment claim, but must be evaluated as part of other criteria.[129]

b.      *Crayton's claims and state court decision*

Crayton argued in his state appeal that the slightly more than twelve months he was incarcerated between his indictment on March 14, 2001[130] and the entering of the pleas on April 9, 2002[131] constituted a violation of Ohio's speedy trial statute mandating a defendant be tried within 270 days of his arrest.[132]  He further asserts that the several requests for continuances reflected in the record as being at his request were "boilerplate journal entries that are routinely used to charge statutory time, or 'days' to defendants."[133]

The state's brief, however, noted that there were seven specific requests for a continuance – some made directly in writing by defense counsel – that tolled the statute for a total of 113 days.[134]  Thus, the state contends, the 388 days between arrest and the final

---

[128] *Id.*

[129] *Doggett v. United States*, 505 U.S. 647, 655-56 (1992).

[130] The state correctly noted that the Ohio speedy trial clock actually starts with the date after an arrest – here February 7, 2001 – not the date of indictment.  *See*, ECF # 8, Attachment 3, Ex. 16 (State appellate brief) at 4.

[131] The pleas were entered on March 4, 2002 and the sentence imposed on April 9, 2002.

[132] ECF # 8, Attachment 2, Ex. 15 (Crayton's Ohio appeals brief) at 1, 5.

[133] *Id.* at 6.

[134] ECF # 8, Attachment 3, Ex. 16 at 4.

acceptance of the pleas on March 3, 2002[135] was tolled by 113 days and, thus, Crayton should be considered to have been brought to trial within 275 days of his arrest.  The state further argues that even this 275-day period should be reduced by motions to suppress and discovery requests that were filed by Crayton.

The state appeals court found that Crayton was responsible for the various continuance motions and so liable to a tolling of the speedy trial clock that left a speedy trial period of 275 days.[136]  The Ohio appellate court further found that, pursuant to Ohio statute, any time consumed by motions initiated by the accused will further toll the speedy trial clock.[137]  It cited to more than five separate motions filed on Crayton's behalf that, collectively, reduced the speedy trial period to well below the 270 days required by Ohio law.[138]

c.      *The state appeals court decision was not contrary to clearly established federal law.*

Although the Ohio court did not rely on any federal law to arrive at its decision, its factual findings are presumed to be correct absent clear and convincing evidence.[139]  Here, Crayton asserts that various continuances that appear on the record as defense requests are

---

[135] As noted, the record is that the pleas were actually entered on March 4, 2002.  *See*, ECF # 9, Ex. 26 (transcript).  The sentence was imposed on April 9, 2002.

[136] *Crayton*, 2003 WL 21027500, at *1.

[137] *Id.* at *2, citing Ohio Rev. Code § 2945.72(E).

[138] *Id.*

[139] *McAdoo*, 365 F.3d at 493-94.

mere "pretext" but offers no facts to support that position.[140]  Accordingly, on the record as found by the state court, the Magistrate Judge recommends finding that the gross period between arrest and the acceptance of the pleas was scarcely more than twelve months, thus arguably triggering an inquiry into the reasons for the delay.

However, the numerous requests for continuances filed by the defendant as well as other motions filed on his behalf show that the defendant caused a substantial amount of the delay – one of the factors specifically cited by the Supreme Court in *Doggett v. United States*, bearing on whether a constitutional speedy trial violation has occurred.[141]  The state appellate court, therefore, did not act contrary to clearly established federal law in denying Crayton's speedy trial claim.

Accordingly, the Magistrate Judge recommends denying this ground for habeas relief.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Crayton's petition be denied in part and dismissed in part.

Dated:  December 1, 2006                                    s/ William H. Baughman, Jr.
                                                            United States Magistrate Judge

---

[140] ECF # 10 at 8.

[141] *Doggett*, 505 U.S. at 651.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[142]

---

[142] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).